OPINION OF THE COURT
Vincent B. Campbell, J.
The defendant, Darryl T. Roundtree, is charged with the offense of overdriving, torturing and injuring animals; failure to provide proper sustenance, a misdemeanor, in violation of section 353 of the Agriculture and Markets Law. The accusatory instrument, which charges the defendant with said violation, was prepared and filed with the court on March 9, 2016 by investigator Reno Di Domenico, who is employed by the Humane Society of Greater Rochester. The information alleges that on February 18, 2016 at approximately 2:40 p.m. at 132 Clearview Road in the Town of Greece, County of Monroe and State of New York, the defendant, Darryl T. Roundtree,
“with omission and neglect deprived an animal of necessary sustenance, food or drink and willfully set on foot, instigates, engages in or in any way furthers any act of cruelty to any animal or any act to produce such cruelty. To wit: the defendant being the owner and in custody and control of an adult female pit bull, color brown and white, named Coco, failed to provide basic care established for dogs by not providing it with access to fresh water daily.”
The accusatory instrument alleges “the defendant filled a water bucket two days prior and said water froze leaving no drinkable water” and that “the defendant continued to maintain said conditions after being told multiple times prior to this incident of proper care required by the law.”
The defendant has filed a motion seeking dismissal of the accusatory instrument as defective. The defendant contends that the accusatory instrument is defective on its face failing to meet the requirements of a misdemeanor information and must be dismissed. After careful review of the accusatory instrument the court concludes that it meets the requirements for a misdemeanor information and therefore is sufficient on its face. Said information sets forth sufficient nonhearsay factual allegations asserted by the humane society investigator, Reno Di Domenico, which, based on his personal knowledge and *444 observations, establishes each and every element of the crime charged and establishes reasonable cause to believe that the defendant committed said crime. Accordingly, the defendant’s motion to dismiss the accusatory instrument as defective is denied.
The defendant has also moved to suppress the evidence seized by the humane society investigator, Reno Di Domenico, on the grounds that said evidence, including photos, observations, the dog Coco, along with other evidence seized, was unlawfully seized by said investigator who conducted a warrant-less search and seizure at the defendant’s premises in violation of the defendant’s Fourth Amendment rights under the United States Constitution prohibiting unreasonable search and seizure. After argument of motion, the court ordered a hearing pursuant to CPL 710.60 (4) to address the suppression issues raised by the defendant.
Finding of Facts
The hearing was held on September 9, 2016. The investigator, Reno Di Domenico, testified that on Thursday, February 18, 2016 at approximately 10:00 or 11:00 a.m. he received a phone call from an unidentified neighbor of the defendant. She advised him that there had been a major snow storm in the area on Monday night (Feb. 15, 2016) and Tuesday (Feb. 16, 2016) and saw the defendant at the home on Tuesday. The investigator testified that the neighbor stated “she hadn’t seen anybody at the house since early Tuesday (February 16, 2016) ... no activity, no car, and there was no nothing at the house.” She stated she had heard the dog in the garage a couple of days prior to calling the investigator and that on Thursday (Feb. 18, 2016 ) “she hadn’t heard anything about the dog and was worried.” The investigator testified that after talking to the neighbor “I wasn’t really going to go out there because we already had an open case, but she was pretty adamant and kind of concerning on the phone.” According to the investigator’s testimony he did not immediately respond to the call since he had not prioritized the call as “the most important ones” he needed to respond to first. When questioned as to why he delayed responding to the call he speculated that the other calls were “probably dogs outside with no shelter cases.” However he did not offer any specific information regarding these prioritized calls. He further speculated that he “probably had administrative stuff” to do before he left the office. When he did leave his office, he took his camera with him, as he *445 testified he commonly does when he goes out on calls. The officer arrived at the defendant’s home on February 18, 2016 at approximately 2:00 p.m. “three to four hours” after receiving the anonymous phone call. Upon arriving at the scene he observed that the defendant’s driveway was “packed with snow” and “not plowed.” He testified that he observed footprints in the snow going up the defendant’s driveway leading to the rear back door of the house which were somewhat covered by additional snow. However, he did not know who had made the footprints nor did he know if the defendant was at home. At the scene, the unidentified neighbor approached the investigator and told him that she was concerned for the animal and had not heard the dog all day. The investigator stated that based on his observations he concluded, “that no one had been there,” and decided to approach the house. He walked up to the rear back door of the defendant’s house and knocked on the door, but no one answered. He then went to the detached garage where he had found the dog on previous occasions, and where the neighbor had told him she heard the dog. He testified that there were no footprints from the house to the detached garage and stated “it was fresh snow; there was no blown-in cover. We could tell nobody had been at the garage.” He knocked on the overhead garage door as he had done on previous calls to the defendant’s home. He testified that in the past when he knocked on the garage door the dog would bark or scamper around or scratch on the overhead door because she knew someone was around. However, on February 18, 2016, the date of the incident, he knocked on the door and did not hear any barking, scampering or any movement inside. At that point in time the investigator believed the dog was “dead or dying” due to the extreme outside temperatures and his concern that the dog was confined without water which could cause hypothermia. It appears that the investigator assumed that the dog was confined without water having found the dog without water on past visits. The investigator became concerned for the dog’s safety and asked investigator Laura Thompson to see if she could try to locate the defendant. However, she was unable to do so. At that point, the investigator decided to lift the garage door a few inches to see if he could hear any activity from the dog. Not hearing anything, he then lifted the garage door half way up at which time the dog started to walk out. He then grabbed the dog, which had been chained inside, to make sure she would not run off. He observed a bowl or a bucket of *446 water in the garage that was frozen. He saw empty bags of dog food but no food for the dog. Once he secured Coco, he began to take photographs of the scene. He testified the dog was active, standing on all four legs, and had no signs of injury or malnourishment but seemed more lethargic initially and then “became more excited.”
It is important to note that the February 18, 2016 incident was not an isolated event. The investigator testified that he and investigator Laura Thompson had three prior contacts with the defendant regarding the care and welfare of the dog. He testified that the defendant in the past had not provided shelter for the dog and the dog was left outside without water. Further, he testified that the Greece Police had also received calls from neighbors complaining that the dog was outside without water. In August of 2015 the investigator seized the dog from the garage in response to complaints from his neighbors after learning that the defendant was incarcerated and no one was coming over to take care of the dog. He testified that both he and investigator Thompson had on previous occasions spoken with the defendant about providing the proper care for the dog including sheltering the dog in a dog house.
Warrantless Search and Seizure
The Fourth Amendment of the United States Constitution protects individuals from unreasonable search and seizure. Generally, a warrantless entry by law enforcement officials upon an individual’s private property to conduct a search and seizure constitutes a violation of an individual’s Fourth Amendment rights. Baring certain constitutionally permissible exceptions established by case law, such searches and seizures are unlawful and the evidence seized therefrom must be suppressed.
In this case the humane society investigator entered the defendant’s premises on February 18, 2016 without first seeking a search warrant from a local magistrate. As such, the first issue to be decided by the court is whether the humane society investigator was empowered to conduct a warrantless search and seizure of the defendant’s premises, if constitutionally permissible.
Section 2.10 (7) of the Criminal Procedure Law identifies a humane society officer as a “peace officer.” Under section 2.20 (1) (c) of the Criminal Procedure Law, a peace officer is duly empowered to conduct a warrantless search “whenever such *447 searches are constitutionally permissible and acting pursuant to their special duties” (emphasis added). The special duties of a humane society investigator are clearly defined in article 26 of the Agriculture and Markets Law, adopted for the purposes of protecting and preventing cruelty to animals. Recognizing animals to be living beings in need of protection, the legislature conferred special powers to humane society officers to enforce the provisions of said Agriculture and Markets Law to protect and prevent cruelty to animals. These powers include the authority to arrest and file charges against individuals who violate the provisions of said law. Accordingly, the court finds that the investigator in this case acting in his capacity as a “peace officer” possessed the authority to conduct a warrant-less search, provided it was constitutionally permissible, subject to the constraint imposed by the Fourth Amendment upon all law enforcement officials acting as government agents of the state.
In addition to the search powers conferred upon the investigator as a peace officer under the Criminal Procedure Law, section 372 of the Agriculture and Markets Law specifically authorizes a humane society investigator to obtain a search warrant from a magistrate to enter and search any building or place where, based on reasonable cause, suspected animal cruelty or other violations of the Agriculture and Markets Law are occurring or about to occur. The defendant contends that the humane society investigator should have first obtained a search warrant pursuant to said section 372 of Agriculture and Markets Law before entering the defendant’s premises and that without such warrant, the search and subsequent seizure of evidence must be suppressed as a violation of the defendant’s Fourth Amendment rights. The People, on the other hand, contend that the investigator, a duly constituted peace officer, was authorized to conduct a lawful warrantless search invoking the “emergency doctrine” exception to the warrant requirements of the Fourth Amendment. The People contend that the investigator’s warrantless search and seizure was prompted by a state of “emergency” that existed and was therefore lawful in accordance with People v Mitchell (39 NY2d 173 [1976]) and People v Doll (21 NY3d 665 [2013]).
In People v Mitchell (39 NY2d 173 [1976]), the Court of Appeals ruled that a warrantless search and seizure of private property would be considered reasonable and therefore not in violation of the Fourth Amendment if it complied with three *448 enumerated elements recited in its decision (at 177) as follows: (1) “The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property”; (2) “the protection of human life or property in imminent danger must be the motivation for the search”; and (3) “there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.”
The defendant contends that the emergency doctrine established by the Court of Appeals in People v Mitchell (39 NY2d 173 [1976]) is not applicable to the present case. The defendant argues that element (2) (cited above) specifically refers to the protection of human life not animal life and therefore it is not available in animal cruelty cases. The People contend that the standard for determining the application of the emergency doctrine is set forth in People v Doll (21 NY3d 665 [2013]) which omits the use of the word human in reference to the three elements of the emergency exception. The Court of Appeals in People v Doll (21 NY3d 665, 670-671 [2013]) enumerated the three elements as follows:
“(1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property and this belief must be grounded in empirical facts; (2) the search must not be primarily motivated by an intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.”
It can be argued that the Court of Appeals in People v Doll (21 NY3d 665 [2013]) either intended to revise the emergency standard for determining the legality of a warrantless search and seizure, or as the defendant argues, merely misstated the standard in its 2013 ruling. The court disagrees with the defendant’s analysis. The court concludes that the three elements set forth in People v Doll (21 NY3d 665 [2013]) constitute the standard to be applied in this case. To rule otherwise, would be to totally disregard the in-depth analysis the Court of Appeals recited in applying the revised emergency elements in the violent murder case it decided.
The Emergency Doctrine in Animal Cruelty Cases
It is important to note that the Court of Appeals in both People v Mitchell (39 NY2d 173 [1976]) and People v Doll (21 *449 NY3d 665 [2013]) recites in the body of each decision the phrase “for the protection of life or property” thereby contemplating that “property” is also entitled to be protected in emergency situations.
There is no doubt for all intents and purposes that an animal is recognized, both by case law and statute, to be “property” (albeit a living being). Following the logic of the emergency doctrine outlined by the Court of Appeals, it would appear, in this court’s opinion, that the protection of animal life (property), although not specially identified, was indeed contemplated by the Court in its decisions. If the Court had intended to exclude the protection of animal life from its emergency doctrine it would have specifically addressed that issue. To reason otherwise would be to reject the legal definition of property, which includes animals.
In People v Rogers (184 Misc 2d 419 [2000]) the Appellate Term of the Second Department held that the emergency doctrine established in People v Mitchell (39 NY2d 173 [1976]) applies to animals. The court concurs with the Appellate Term’s rationale. Protection of animal life and the prevention of cruelty to animals have gained greater urgency and awareness in recent years. The legislature has recognized its responsibility to ensure the protection of animal life by the enactment of article 26 of the Agriculture and Markets Law. The adoption of the arrest and search powers of humane society officers demonstrates the legislature’s intent to recognize animals as living beings, if not valuable property, to be protected.
Accordingly, this court holds that the emergency doctrine, established by the Court of Appeals as an exception to the warrant requirements of the Fourth Amendment, applies to the protection of animals and therefore may be relied upon to determine whether a warrantless search of an individual’s property and subsequent seizure of evidence in an animal cruelty case was lawful and not in violation of one’s Fourth Amendment rights.
Application of the Emergency Doctrine in Present Case
In the present case, the People contend that the humane society investigator, Reno Di Domenico, entered the private property and garage of the defendant without a warrant due to an emergency situation that required him to act immediately to protect and preserve the life and safety of the dog, Coco, thereby preventing him from first seeking a search warrant.
*450 “The applicability of the emergency doctrine is a mixed question of law and fact” (People v Doll, 21 NY3d 665, 671 [2013]) that must be reviewed by the court in rendering its decision.
The first element of the emergency doctrine requires that the humane society investigator had to have reasonable cause to believe that an emergency existed, and there was an immediate need for assistance for the protection of life or property based on the empirical facts of the case. The investigator had previous contacts with the defendant and his dog. He was astutely aware of the fact that the defendant had not properly cared for the dog Coco in the past. The defendant had failed to provide fresh daily water or proper shelter for the animal on several occasions. On one occasion, in August of 2015, the investigator was forced to seize the dog from the defendant’s garage because it had been left alone without daily nourishment and fresh water due to the defendant being in jail and no one caring for the dog. On February 18, 2016, the investigator arrived at the defendant’s house and discovered that the defendant was in fact not home (he knocked on the door and no one answered), and was told by the neighbor that she had not seen the defendant for two days after the severe snowstorm nor had she heard the dog which had been kept in the garage. Granted, that the investigator did not initially believe an emergency existed when he took the neighbor’s call, his opinion changed upon arriving at the home and observing the totality of the circumstances, that is (a) the driveway packed with snow and not plowed, (b) the severity of the cold weather conditions, (c) the heavy snowstorm that prevented driveways from being plowed, (d) observing only one set of footprints in the snow leading to the defendant’s back door, (e) no footprints leading to the defendant’s detached garage where the neighbor told him she last saw the dog, and (f) knocking on the garage door without any response whatsoever from the dog, which on past visits would cause the dog to bark and scamper around inside. Believing that the dog was “dead or dying” he immediately responded to the emergency he perceived. Accordingly, the court finds that investigator Reno Di Domenico had reasonable cause to believe that an emergency existed at the time of his arrival requiring his immediate assistance to protect the life of the dog Coco, which he believed to be in jeopardy.
As to the second element of the emergency doctrine, it is clear from the facts established at the hearing that the *451 investigator did not enter the defendant’s property and garage with the primary intent of arresting the defendant and seizing evidence of a crime. The facts established that the investigator’s primary motive was his concern for the dog’s safety and well-being. In fact the investigator on numerous past occasions could have arrested the defendant for similar charges, but instead attempted to educate the defendant in the proper care of his dog. The manner in which he attempted to deal with the defendant in the past supports the conclusion that his entry was primarily motivated to save the dog, not to arrest the defendant and gather evidence of a crime.
The last element of the emergency doctrine requires a finding of “some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.” As the court has determined there was proof that an emergency existed. Furthermore, there was sufficient proof that the dog was in the garage on that day. The investigator, based on the neighbor’s advisement that she heard the dog in the garage, along with his knowledge from past experiences that the defendant had sheltered the dog in the garage (including the Aug. 2015 incident) had, in this court’s opinion, probable cause to believe that the dog was inside the garage, alone for some time, during extreme outside weather conditions which could have lead to hypothermia and the ultimate death of the dog.
Accordingly, the court concludes that the emergency doctrine is applicable in this case but only to the extent of the initial warrantless entry into the defendant’s garage, the securing of the dog as evidence, and the observations of the investigator at the time of the initial entry regarding the living conditions inside the garage affecting the safety and well-being of the dog. Therefore, the dog and following observations of the investigator, (a) the condition of the dog and garage, (b) the frozen bowl or bucket of water in the garage, and (c) the lack of food and empty dog bags, are admissible as evidence at trial. All other evidence seized from the garage, including the photos taken, is suppressed. The emergency was at an end once the investigator, viewing the living conditions inside the garage, seized the dog. At that point in time, the investigator was required to obtain a search warrant from a local magistrate pursuant to section 372 of the Agriculture and Markets Law to lawfully *452 continue his search and seizure. (See People v Dillon, 44 AD3d 1068 [2d Dept 2007]; People v Ellison, 46 AD3d 1341 [4th Dept 2007]; People v Doll, 21 NY3d 665, 673-676 [2013, Rivera, J., concurring]).